1999 ME 57

**Richard ALLEN**

v.

**BATH IRON WORKS CORPORATION.**

Supreme Judicial Court of Maine.

Argued April 6, 1999.

Decided April 15, 1999.

Jeffrey L. Cohen (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, P.A., Topsham, for employee.

Stephen W. Moriarty, Norman, Hanson & DeTroy, LLC, Portland, for employee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The employer, Bath Iron Works Corp., appeals from a decision of the Workers' Compensation Board granting the employee's petition for award of an inflation adjustment for partial incapacity benefits. Partial incapacity benefits are calculated based on the difference between the employee's average weekly wage at the time of the injury[1] and the employee's post-injury earning capacity. *See* 39 M.R.S.A. § 55–B (1989), *repealed and replaced by the Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8. For injuries after 1987, employees are not entitled to an annual inflation adjustment of partial incapacity benefits.[2] The hearing officer concluded, however, that the employee's average weekly wage, adjusted for inflation, must be considered when determining the initial rate of partial benefits, because an adjusted weekly wage had been previously used for a short-term award of total incapacity benefits. We disagree and vacate the decision.

[¶ 2] The employee, Richard Allen, suffered two work-related back-injuries. The first injury occurred in 1991, while Allen was employed at BIW. The second injury occurred in 1997, while Allen was employed at Rugby Builders. Allen received short-term total benefits during a brief period of total incapacity following his second injury, and partial benefits in varying amounts after he returned to part-time employment, based on the difference between his pre-injury wage and his varying post-injury earnings. Allen was subsequently laid off by Rugby Builders for reasons unrelated to his injury. Following his lay-off, Allen has received an increase in his benefits to 100% partial, based on his inability to find further post-injury employment. *See e.g., Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 928–29 (Me.1996).

[¶ 3] In April 1997 the parties concluded a mediation agreement in which BIW and Rugby Builders agreed to share liability according to a 50%/50% apportionment. Allen and BIW concluded a second mediation agreement in July 1997, in which BIW agreed to pay an inflation adjustment for its proportionate share of total incapacity benefits, but not for partial benefits.[3] Following

---

1. The term "average weekly wage" is defined at 39–A M.R.S.A. § 102(4) (Supp.1998). *See Beaulieu v. Maine Medical Ctr.,* 675 A.2d 110, 111–12 (Me.1996) (definition of average weekly wage applies retroactively to pre–1993 injuries).

2. 39 M.R.S.A. § 55–B provides, in pertinent part:
   While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury . . . .
   . . . .
   39 M.R.S.A. § 55–B, *repealed by* P.L.1991, ch. 885, § A–7.

3. The law at the time of Allen's 1991 injury expressly provided an inflation adjustment for total incapacity compensation after a three-year waiting period. Former section 54–B provides, in pertinent part:

While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53–B, nor less than $25 weekly.
   1. **Annual adjustment.** Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually. The adjustment shall be equal to the lesser of the actual percentage increase or decrease in the state average weekly wages, as computed by the Bureau of Employment Security, for the previous year or 5%.
   The annual adjustment shall be made on the 3rd and each succeeding anniversary date of the injury . . . .
   . . . .
   39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7.

the second mediation, Allen filed a petition for award of an inflation adjustment, contending that his partial incapacity benefits from BIW must be based on an adjusted average weekly wage. The Board granted Allen's petition, stating: "There is nothing in the language of § 54–B that could lead the Board to conclude that [inflation adjustments] previously applied for periods of total should be discarded during periods of partial." We granted BIW's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

[¶ 4] Prior to 1987, partially incapacitated employees were entitled to an annual adjustment of partial benefits to reflect inflationary (or deflationary) fluctuations in the State average weekly wage. 39 M.R.S.A. § 55–A (Supp.1987), *repealed by* P.L.1987, c. 559, Pt. B, § 29. In 1987, the Act was amended to remove the inflation adjustment for partial incapacity benefits. P.L.1987, ch. 559, Pt. B, §§ 29, 30, *repealed by* P.L.1991, ch. 885, § A–7. The 1987 amendments were intended to reduce workers' compensation costs, generally, and thereby prevent insurance carriers from withdrawing business from the State. P.L.1987, ch. 559, Emergency Preamble; *McDonald v. Rumford Sch., Dist.,* 609 A.2d 1160, 1161 (Me.1992).

[¶ 5] In *Saunders v. MacBride Dunham Management,* 1998 ME 72, ¶ 4, 708 A.2d 1030, 1032, we recently considered whether the effects of inflation could be taken into account in determining an employee's initial rate of partial benefits pursuant to section 55–B, notwithstanding the repeal of the annual inflation adjustment. In that case, the Board had computed the employee's partial compensation based on a dollar-for-dollar comparison between pre- and post-injury wages, without adjusting either wage for the effects of inflation. *Id.* at ¶ 2, 708 A.2d at 1031. The employee contended on appeal that, in order to accurately determine his loss of earning capacity, the Board should have "deflated" his current earnings in 1997 when comparing those wages with his pre-injury wage in 1990. *Id.* at ¶ 3, 708 A.2d at 1031. We affirmed the Board's decision, stating that "[t]he enactment of a statutory inflation adjustment for partial incapacity benefits,

and the subsequent repeal of that adjustment, reflects a legislative intent to remove any consideration of inflation with respect to partial benefits." *Id.* at ¶ 4, 708 A.2d at 1032.

[¶ 6] Our interpretation of section 55–B in *Saunders* also governs our result in the present case. As in *Saunders,* we conclude that section 55–B's silence with respect to an inflation adjustment, in light of its history, reflects a legislative intent to remove consideration of inflation in the calculation of partial benefits. We see nothing in the statute or in its legislative history to suggest that the Legislature intended to treat partially incapacitated employees with previous periods of total incapacity differently from partially incapacitated employees without an intervening period of total incapacity.

[¶ 7] Allen contends, however, that once an employee's pre-injury wage has been "adjusted" for use in determining total benefits, the employee is entitled to the application of the "adjusted" wage in the determination of partial benefits. We disagree. Pursuant to former title 39, the inflation adjustment was ordinarily applied to the amount of compensation paid to the employee, not to the employee's average weekly wage. *Saunders,* 1998 ME 72, ¶ 5, 708 A.2d at 1032; *Lagasse v. Hannaford Bros., Co. .,* 497 A.2d 1112, 1116–17 (Me.1985); *Bernard v. Cives Corp.,* 395 A.2d 1141, 1149–52 (Me.1978). Indeed, both former sections 54–B and 55–A expressly provided for an adjustment of the employee's "weekly compensation," not the employee's pre-injury or post-injury wage. 39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7; 39 M.R.S.A. § 55–A (Supp.1987), *repealed by* P.L.1987, ch. 559, Pt. B, § 29. The only limited exception that we have recognized to this general rule is the so-called "Arnold formula," applicable in limited situations when an employee's post-injury earnings vary significantly from week-to-week. *Lagasse,* 497 A.2d at 1116–17. We, therefore, do not agree with the employee's assertion that our decision in *Lagasse* stands for the proposition that an adjustment of the employee's pre-injury wage is required in all cases of total or partial incapacity pursuant to former title 39.

[¶ 8]   The fact that the employee received an inflation adjustment to his short-term award of total incapacity benefits has no effect on the calculation of his partial incapacity benefits.   Allen was not entitled to receive an inflation adjustment to his partial incapacity benefits, and the hearing officer erred in concluding otherwise.

The entry is:

The decision of the Workers' Compensation Board is vacated.   Remanded to the Workers' Compensation Board for further proceedings consistent with this decision.