

STATE OF MAINE
SAGADAHOC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-2017-15

TROY WATSON,

      Plaintiff,

v.

GEORGE E. BOWKER,

and

CAROL DOUGHTY, in her capacity as
Conservator of George E. Bowker,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON
DEFENDANTS'
MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss.

## I.    Background

In 1975, Virginia Watson, Plaintiff's mother, approached George Bowker, Defendant, about purchasing a piece of real estate on which to place a trailer. (Compl. ¶¶ 6-7). Defendant agreed to sell Ms. Watson a four-acre parcel for $4,500. (Compl. ¶ 8). Ms. Watson attempted to pay Defendant, who refused to accept her money, telling her that she should use it for her family. (Compl. ¶¶ 10-11). Ms. Watson attempted to pay Defendant "on numerous occasions" over the years, and Defendant continually refused, saying they would "settle up later." (Compl. ¶ 15). In the early 1980's, Ms. Watson's oldest son approached Defendant on several occasions to pay him for the land, and Defendant similarly refused. (Compl. ¶ 16).

Sometime between the 1980's and 1998, Defendant sold to other persons three of the four acres that he had agreed to sell to Ms. Watson. (Compl. ¶¶ 17, 20). It is Plaintiff's belief that Defendant's refusal to deed the land to Plaintiff's

1

mother allowed him to avoid subdivision regulation in selling off those other three acres. (Compl. ¶ 18).

Upon Ms. Watson's death in 1998, Plaintiff was the sole heir to the land promised by Defendant, and succeeded to any rights in it held by Ms. Watson. (Compl. ¶¶ 20-22).

On November 5, 2007, Plaintiff gave, and Defendant accepted, a $2,000 payment towards the land. (Compl. ¶¶ 23-24). In the following months, Plaintiff gave, and Defendant accepted, two other payments of $500 each. (Compl. ¶ 25).

Since 2007, Defendant has acknowledged the pending land transaction and told Plaintiff that that he would "get that cleaned up" or "take care of that land" or "deed over that land" soon. (Compl. ¶ 27). Plaintiff relied on these statements and had no reason to question Defendant's intention to honor the deal. (Compl. ¶¶ 28-29). Although Defendant was known for making "loose, unwritten land deals on a regular basis" because "he liked to work in cash and without the confines of a written agreement," Plaintiff believed that Defendant had always intended to close the deal. (Compl. ¶ 19, 30).

In March 2017, Defendant told Plaintiff he was dying and wanted to take care of the land deal. (Compl. ¶¶ 31). Later that month, Plaintiff visited Defendant at his home, where both parties agreed that Defendant would deed the land to Plaintiff for $1. (Compl. ¶¶ 32-34). The deed was never delivered. (Compl. ¶ 36). In July, Defendant was declared incompetent and his conservator, and Co-Defendant, refused to complete the transaction. (Compl. ¶¶ 3, 4, 36).

Plaintiff commenced this action to compel specific performance and other relief. Defendant moves to dismiss Plaintiff's Complaint pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

2

## II.    Standard of Review

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (internal citations omitted). The court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123, 127. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.*

## III.    Discussion

Defendant makes multiple arguments in his Motion regarding whether Plaintiff has stated a claim upon which relief may be granted. A decision on the application of the statute of limitations is determinative, therefore a discussion on the other arguments is not necessary.

The Complaint contains three counts: breach of contract, fraud, and violation of the Maine Unfair Trade Practices Act (5 M.R.S. § 205-A, et seq.). (Compl. ¶¶ 37-53). Each of these has a six-year statute of limitations from the time the cause of action accrues. 14 M.R.S. § 752.

Since the statute of limitations is an affirmative defense, it is Defendant's burden to show that time has run. *Miller v. Miller*, 2017 ME 155, ¶ 10, __ A.3d __. The burden then shifts to Plaintiff to show why the statute of limitations does not

3

bar his claims. *Id.* Plaintiff argues that the statute of limitations has not yet run its six years. Alternatively, Plaintiff argues that if the six years has run, equitable estoppel and equitable tolling prevent his claims from being time-barred.

## A. **When Statute of Limitations Began Running**

First, for a breach of contract claim, the cause of action accrues when the defendant breaches the contract. *Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599. Second, a cause of action for fraud accrues when the plaintiff discovers he or she has a cause of action. *Drilling and Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 10, 147 A.3d 824. Third, under the Maine Unfair Trade Practices Act ("UTPA"), the cause of action accrues "at the time a judicially cognizable injury is sustained," not when the plaintiff realizes the scope of the injury. *Campbell v. Machias Sav. Bank*, 865 F.Supp 26, 34 (Me. 1994); *Dugan v. Martel*, 588 A.2d 744, 746 (Me. 1991) (*citing Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me. 1987)).

Plaintiff's three causes of action accrued by 1998 at the latest, when Defendant sold off three acres of the land promised to Ms. Watson. First, Defendant sold to other persons the majority of the land he contracted to sell to Plaintiff's mother. This is certainly a breach of contract, since he could no longer perform by selling Plaintiff's mother the four acres promised. Second, one of the elements of fraud is that Defendant made a representation to Plaintiff with knowledge of its falsity or in reckless disregard of whether it was true or false. *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280. At the time the three acres were sold to other persons, Plaintiff should have known that further reassurances from Defendant that he would make good on the entire promise were false, because Defendant could not convey the entire four acres. Therefore, a cause of action for fraud accrued at least in 1998 when the three acres had been sold off. Third, the

4

UTPA claim also accrued when the three acres were sold off, because that was a legally cognizable injury related to the promise to sell four acres.

Plaintiff argues that when Defendant sold the three acres, it was only a partial breach of contract, and the remainder of the contract was still enforceable.[1] (Pl.'s Opp. 5). It is unclear whether Plaintiff makes this point solely for the purpose of remedies, because immediately after asserting the partial breach, he argues that damages can be ordered on the enforceable portion. Indeed, the term "partial breach" is one frequently used in the context of damages. 10 Corbin on Contracts § 53.4.[2] Thus, the usage of the term "partial breach" indicates that Plaintiff is making this point for the purpose of remedies, and not does not necessarily contend that he has claims for breach, fraud, and UTPA under the alleged remaining, partially enforceable contract. Nonetheless, any partial payments or actions which Plaintiff contends created a cause of action in 2007 occurred over six years ago, so the statute of limitations has run on those claims.

B. **Tolling the Statute of Limitations**

Although, as determined above, the statute of limitations has run, Plaintiff argues that the doctrines of equitable estoppel and equitable tolling allow his claim to be brought now. Plaintiff asserts that the distinction between equitable estoppel

---

[1] As Defendant argues in his reply, the terms in this remaining, partial contract that he seeks to enforce are unclear. It is unclear whether Plaintiff seeks to purchase the remaining one acre for the remainder of the original $4500 purchase price, whether Plaintiff seeks to purchase the remaining one acre for the $1 agreed upon in 2017, or whether Plaintiff only seeks to purchase the land underneath the trailer (See Pl.'s Opp 5 where Plaintiff seeks that Defendant "at least transfer the land containing the home").

[2] Plaintiff only cites Restatement 2d of Contracts for his allegations. It is fitting, therefore, to also cite secondary material for purposes of interpreting his arguments.

and equitable tolling is merely academic. However, a distinction does exist[3]. Additionally, as described below, the two doctrines contain different elements. Therefore, they are considered separately.

a. **Equitable Estoppel**

Equitable estoppel prevents a party "from asserting rights which might perhaps have otherwise existed against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *HHS v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630 (*citing Waterville Homes, Inc. v. Maine Dep't of Transp.*, 589 A.2d 455, 457 (Me. 1991)).

The Law Court has stated that the doctrine of equitable estoppel "should be carefully and sparingly applied." *Vacuum Sys. V. Bridge Constr. Co.*, 632 A.2d 442, 444 (Me. 1993). This may be evidenced by the fact that neither party has cited a case where the Law Court decided to apply equitable estoppel.

To succeed in an equitable estoppel claim, Plaintiff must show by clear and convincing evidence that (1) Defendant's statements induced him to act, or fail to act; (2) reliance on Defendant's statements was detrimental; and (3) the reliance was reasonable. *John F. Murphy Homes, Inc. v. State*, 2017 ME 67, ¶ 23, 158 A.3d 921; *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 15, 868 A.2d 230.

---

[3] "The doctrine of equitable estoppel is distinct from the doctrine of equitable tolling. In cases of equitable estoppel, the statute of limitations has expired and the defendant asserts the running of the statute of limitations as a defense. The defendant, however, is estopped from benefitting from the statute of limitations as a defense because the defendant has acted in such a way as to cause the claimant to forego filing a timely cause of action. In contrast, in cases involving the doctrine of equitable tolling, the defendant does not have the statute of limitations as a valid defense because it has not yet run. Rather, the statute of limitations is tolled when strict application of the statute of limitations would be inequitable." *Dasha by Dasha v. Maine Med. Ctr.*, 665 A.2d 993, 995 n.2 (Me. 1995).

6

i.   **Induced him to act**

Under the first element, Defendant's misleading conduct must have induced Plaintiff to act, or fail to act. *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 539 (Me. 1977). However, Defendant's statements need not be knowingly or intentionally misleading. *Id.* Thus, whether Defendant truly intended for the land deal to go through does not preclude the application of equitable estoppel, as Defendant contends. (Def.'s Reply 4).

However, as relayed in *Townsend v. Appel*:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which <u>actually induces the plaintiff not to take timely legal action on a claim</u>.

446 A.2d 1132, 1134 (Me. 1982) (internal citations omitted, emphasis added). The Complaint does not expressly state that Plaintiff would have sought legal redress if he had believed Defendant would not close the transaction. Plaintiff's Opposition to Defendant's Motion states that if necessary, Plaintiff would seek to amend the Complaint to allege as such. (Pl.'s Opp. 5). Since a motion to dismiss must be based on facts as alleged in the complaint, Plaintiff's willingness to amend does not itself allow the fact to be considered in a decision on this Motion. He would indeed have to amend the Complaint, and has not done so.

The facts at hand are similar to those in *Townsend*. 446 A.2d 1132 (Me. 1982). In *Townsend*, the plaintiff worked for his father while a minor and was led to believe he would eventually be paid, based on his father's statements. *Id.* at 1132. His father continually acknowledged the money owed. *Id.* at 1133. The plaintiff sought to enforce payment more than 6 years after reaching majority, after the statute of limitations had run. *Id.* The court determined, based upon the quoted

7

portion above, that there was insufficient evidence that the plaintiff contemplated filing suit during the statute of limitations period. *Id.* at 1134. Here, since it is not alleged in the Complaint, there is similarly insufficient evidence that Defendant's statements kept Plaintiff from seeking legal remedies during the statute of limitations period.

ii. **Reliance**

Reliance must be objectively reasonable in both duration and scope. *Hanusek v. Southern. Maine. Med. Ctr.*, 584 A.2d 634, 637 (Me. 1990). Two cases illustrate reasonableness of reliance: *Hanusek* and *Murphy Homes*. In *Hanusek*, the plaintiffs filed for medical malpractice three years after the incident, when the statute of limitations was one year. 584 A.2d at 635. In delaying suit, the plaintiffs relied on a single statement made by a nurse on the day of the alleged negligence, inferring that if they spoke to an attorney, they would not receive quality medical care. *Id.* at 637. The court found that the plaintiffs' decision to not even confidentially speak with an attorney, based on one statement made three years prior, was objectively unreasonable. *Id.* In *Murphy Homes*, the plaintiff relied on isolated statements by two different state workers to reconcile its books with the MaineCare program. *John F. Murphy Homes, Inc. v. State*, 2017 ME 67, ¶ 12, 158 A.3d 921. More than ten years after these statements were made, and after the limitations period, the plaintiff asserted that it had not been reimbursed properly from MaineCare, claiming that it relied on those statements in believing that it did not have a cause of action. *Id.* at ¶¶ 20, 24. The court found that relying on two statements made over ten years prior was not reasonable. *Id.* at ¶ 24.

Here, unlike in *Hanusek* and *Murphy Homes*, Plaintiff relied on multiple statements over many years. However, the time period between accrual of the

8

cause of action and the Complaint is at least 19 years, from the time three of the four acres were sold off, which is much longer than either *Hanusek* or *Murphy Homes*. This is long time period to rely on those statements. And, as in *Hanusek*, it is objectively unreasonable for Plaintiff to rely on Defendant's statements and actions in deciding not to even confidentially consult an attorney.

Additionally, it is not reasonable to rely on a promise by a man who was known for making "loose, unwritten land deals on a regular basis" because "he liked to work in cash and without the confines of a written agreement." When such a person sold off 75% of the land that he promised to sell to Plaintiff's mother, and did so to avoid subdivision regulations (both dishonest transactions), it is not reasonable to rely on his further promises to properly convey the remaining acre.

b. **Equitable Tolling**

Plaintiff's last contention is that equitable tolling prevented the statute of limitations from running, and therefore, his claim is not time-barred. A fundamental principle of equitable tolling is that it is "only appropriate when the circumstances that cause a party to miss a filing deadline are out of his hands." *Jobe v. Immigration and Naturalization Services*, 238 F.3d 96, 100 (1st Cir. 2001) (internal citations omitted). Like equitable estoppel, equitable tolling is a "sparingly invoked doctrine," and "is available only in compelling circumstances which justify a departure from established principles." *Id.*; *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989). This may be evidenced by the fact that neither party cites a case in which equitable tolling has properly been applied.

9

Additionally, there are only three Maine Supreme Judicial Court cases mentioning the equitable tolling doctrine, none of which apply it.[4]

To prove equitable tolling, Plaintiff must show (A) that he has been reasonably diligent in pursuing his rights, and (B) that some "extraordinary circumstance" stood in his way, both of which are assessed based on the totality of the circumstances. *Pace v. DiGuglielmo*, 544 U.S. 410, 411 (2005); *Holland v. Florida*, 560 U.S. 631, 653 (2010) (finding that diligence must be reasonable); *Ramos-Martinex v. United States*, 638 UF.3d 315, 324 (1st Cir 2011) (discussing totality of the circumstances). Here, Plaintiff and his mother had offered several times to pay for the land, but were refused. This may be diligence in asking Defendant about the transaction. However, it is not diligence in pursuing their legal rights. As discussed above, there is no evidence that Plaintiff or his mother would have spoken to an attorney or sued Defendant for specific performance years ago, while the limitations period was still running. Therefore, it cannot be said that Plaintiff was reasonably diligent in pursuing his legal rights. Moreover, this case likely does not have the requisite "extraordinary circumstances," since one person's reliance on another's statements to his detriment is not uncommon, and there are no other outstandingly unusual facts in this case.

The First Circuit has delineated five factors that aid it in evaluating an equitable tolling claim: "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an

---

[4] *See Dasha by Dasha v. Meaine Med. Ctr.*, 665 A.2d 993. 335 n.2 (Me. 1995) (discussed equitable tolling only to distinguish it from equitable estoppel); *Miller v. Miller*, 2017 ME 155, ¶¶ 14-19, __ A.3d __ (discussed equitable estoppel but refused to apply it); and *Kobritz v. Severance*, 2007 ME 3, ¶ 16-18, 912 A.2d 1237 (discussed equitable tolling but determined there was an issue of material fact and summary judgment was denied before a finding on equitable tolling was made).

10

absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." *Jobe*, 238 F.3d at 100. Here, it is unknown whether Plaintiff or his mother actually knew there was a six-year limitations period. However, it would be unreasonable for Plaintiff or his mother to believe they would be able to wait at least 19 years from the sale of three of the four promised acres before first asserting their rights. Lack of diligence has been discussed above. Thus, the factors point away from applying equitable estoppel.

Lastly, the U.S. Supreme Court has indicated that cases where equitable tolling may be available include where the plaintiff received inadequate notice; where there is a motion for appointment of counsel pending and equity justifies tolling until the motion is acted upon; where the court has led the plaintiff to believe he has done everything required of him; or where the defendant's affirmative misconduct lulled the plaintiff into inaction. *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Clearly only the last circumstance could apply here. While Defendant affirmatively stated that the deal would be closed and accepted the partial payments, again, there is no evidence that this lulled Plaintiff into not asserting his legal rights. Looking at this last circumstance in relation to the other listed in *Baldwin Cty.*, it appears that equitable tolling would apply in a situation in which a defendant has led the plaintiff to believe that he did not have a claim. This is not the case here. Plaintiff's mother could have brought a claim as early as 1975 when Defendant refused to take her payment and deed over the land.

Back to the fundamental principle of equitable tolling, this is not a case where compliance with the statute of limitations was out of Plaintiff's hands. He and his mother sat on their rights for at least 19 years, with nothing impeding the filing of suit all those years ago. For this reason, as well those described

immediately above, coupled with the rarity with which the doctrine should be applied, Plaintiff's claim of equitable estoppel is denied.

IV.    **Conclusion**

Defendant's Motion to Dismiss is GRANTED. This matter is dismissed with prejudice.

DATE: November 6, 2017

Daniel I. Billings
Justice, Maine Superior Court

12